Theodore SMITH, Plaintiff–Appellant,

v.

Jerry SPRINGER, Richard O'Connell, and Daniel Chilla, Defendants–Appellees.

No. 87–2452.

United States Court of Appeals, Seventh Circuit.

Argued April 7, 1988.
Decided Aug. 31, 1988.

---

Kenneth N. Flaxman, Kenneth N. Flaxman, P.C., Chicago, Ill., for plaintiff-appellant.

L. Anita Richardson, Corp. Counsel, Chicago, Ill., for defendants-appellees.

Before BAUER, Chief Judge, and COFFEY and MANION, Circuit Judges.

BAUER, Chief Judge.

On May 12, 1968, Theodore Smith was arrested and charged with the rape of Shirley Johnson. Ms. Johnson had reported a rape to the Chicago Police Department on April 25, 1968. Chicago police officers escorted her to Billings Hospital at the University of Chicago where a doctor examined her. The doctor took a vaginal smear which failed to show the presence of sperm. According to a police report introduced at Smith's trial, Officer Daniel Chilla, picked up a second swab from a hospital clerk, R. Brown, and took it to the police crime laboratory where tests uncovered evidence of sperm. Subsequently, Smith was arrested and convicted for rape. The Illinois Appellate Court upheld Smith's conviction and the Illinois Supreme Court denied Smith leave to appeal. Smith served three years and five months at the state penitentiary before his release on July 30, 1976.

Upon release from prison, Smith began to investigate the factual circumstances leading up to his conviction. Smith went to Billings Hospital and spoke to an administrator who informed him that the hospital had never employed a clerk named "R. Brown." On the basis of this disclosure, Smith filed this 42 U.S.C. § 1983 lawsuit alleging that the defendants, three Chicago police officers, fabricated evidence against him to secure his conviction.[1] Two years later, during discovery in this action, Smith

learned that Billings Hospital had in fact employed a clerk named R. Brown. When Smith finally located and spoke with Brown, however, Brown denied that he ever gave police any lab samples relating to Smith's rape prosecution. Smith then withdrew his claim that Brown did not exist and argued instead that Brown never furnished lab samples to the defendants.

This new allegation did not alter Smith's claim that the defendants fabricated evidence which led to his conviction. Smith also alleged that the defendants Springer and O'Connell chose to pursue Smith because he refused to bribe them. Smith claimed that earlier in 1968 he paid these two officers $220.00 to avoid battery charges and that when he refused to bribe them again to avoid the rape charge, he was arrested on the next day.

The district court granted the motion for summary judgment of the three remaining defendants on the grounds that Smith's lawsuit was a collateral attack on a state court conviction in federal court and was therefore barred. The district court concluded that

the plaintiff already has received the only remedy which a prisoner attacking a State court conviction can attain—his freedom. Providing a free person with a damages remedy unavailable to one in prison when the claims involved are essentially the same would mean creating a distinction without a difference in the law.

Because we find that Smith's claim is not a collateral attack on his wrongful state court conviction, we reverse.

I.

The district court rested its decision on two Seventh Circuit cases which held that section 1983 does not create a cause of action in federal courts for plaintiffs who attack the validity of their state court criminal convictions. *See Waste Management of Wisconsin, Inc. v. Fokakis*, 614 F.2d 138

---

1. Smith's original pro se complaint also named the Superintendent of the Chicago Police Department and the City of Chicago as defendants. The district court dismissed these defendants as well as other individual police officers. This appeal does not concern these dismissals.

(7th Cir.1980); and *Hanson v. Circuit Court of First Judicial Circuit,* 591 F.2d 404 (7th Cir.1979). *Hanson* involved a claim filed by a prisoner who was convicted and fined in Illinois and later convicted and imprisoned in California on another unrelated charge. The plaintiff sought "declaratory relief invalidating the Illinois judgment of conviction." *Id.* at 409. Initially, the plaintiff asked for relief through a habeas corpus petition. We held that the plaintiff was not entitled to habeas relief because his "fine-only conviction" did not place him in custody within the meaning of the federal habeas corpus statute, 28 U.S.C. § 2254. *Id.* at 405–07. Anticipating this result, the plaintiff argued alternatively that his habeas petition alleged a valid cause of action under section 1983. In other words, the plaintiff, a prisoner in California, sought to use the federal courts via section 1983 to declare his Illinois conviction invalid. We viewed this as a collateral attack on the state court's judgment of conviction and followed the Supreme Court's holding in *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), that "habeas corpus provides the exclusive federal remedy for prisoners attacking the fact or duration of their confinement." *Id.* at 410.

We reaffirmed this holding in *Waste Management,* where a corporation filed a suit under section 1983 to seek "a declaration of the constitutional invalidity of the state court conviction" as well as other equitable relief. *Waste Management,* 614 F.2d at 139 n. 3. The corporation chose this avenue because corporations can never satisfy the custody requirement of section 2254. Relying on *Hanson,* we found this use of section 1983 improper and reiterated our view that Congress intended "section 2254 [to] be the sole avenue of collateral attack of state court convictions." *Id.* at 141.

These two cases, however, bear little resemblance to the facts before us. Unlike the section 1983 plaintiffs in *Hanson* and *Waste Management,* Smith does *not* seek a declaration from a federal court that his conviction was invalid; nor does Smith seek any other form of equitable relief. Smith does not directly challenge the validity of his conviction. He does not attack the fact nor the length of his confinement—nor could he, since he has already served his time. Smith filed his section 1983 action after he was already released from custody. Rather, Smith's lawsuit seeks monetary damages from the police officers who allegedly fabricated evidence which led to his conviction. His section 1983 claim challenges the legality of the conduct of the officers and does not impugn the integrity of the state judicial system. Although the correctness of Smith's conviction may be seriously undermined if he succeeds on his claim, he does not seek this result directly. His lawsuit challenges the conduct of the police officers and not the actions or procedures of the Illinois courts.[2] Thus, Smith's section 1983 claim is not a collateral attack on his state court conviction and *Waste Management* and *Hanson* are therefore inapposite.

This characterization of Smith's claim is consistent with the Supreme Court's decision in *Preiser,* 411 U.S. 475, 93 S.Ct. 1827. There the Court held that when a state prisoner challenges the fact or duration of his physical imprisonment and seeks a determination that he is entitled to an immediate or speedier release, his sole federal remedy is a writ of habeas corpus. The Court, however, explicitly excepted from its holding a damages action by prisoners.

> If a state prisoner is seeking damages, he is attacking something other than the fact or length of his confinement, and he is seeking something other than immediate or more speedy release—the traditional purpose of habeas corpus. In the

2. Theoretically, Smith's conviction may remain valid even if he prevails in his section 1983 claim because clear and convincing testimony of a rape victim is sufficient under Illinois law to support a rape conviction. *People v. Anderson,* 20 Ill.App.3d 840, 314 N.E.2d 651, 656 (1st Dist.1974). In this case, however, the district court found that the victim's testimony could not have been clear and convincing without the admission of the allegedly fabricated lab report.

case of a damages claim, habeas corpus is *not* an appropriate or available federal remedy.

*Id.* at 494, 93 S.Ct. at 1838 (emphasis in original). *See also Wolff v. McDonnell,* 418 U.S. 539, 554–55, 94 S.Ct. 2963, 2973–74, 41 L.Ed.2d 935 (1974) (holding that, although a state prisoner may not sue under section 1983 to restore good time credits, he may sue for damages stemming from unconstitutional prison conditions). Moreover, a state prisoner may bring his damages action in federal court without exhausting his state remedies. *Id.* Thus, under *Preiser* and *Wolff,* even a prisoner may bring a section 1983 action for damages in certain circumstances.

The Supreme Court's subsequent decision in *Haring v. Prosise,* 462 U.S. 306, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983), further elaborated the distinction between damages actions under section 1983 and habeas corpus attacks on state court convictions. The *Haring* Court held that a prisoner who pled guilty and was convicted and sentenced may nevertheless bring a section 1983 damages action against police officers whose allegedly unlawful conduct contributed to his conviction. The unanimous Court reasoned that the prisoner was not collaterally estopped on the basis of his prior state court judgment from litigating his claim that the officers conducted an illegal search because the legality of the search was never actually litigated, the state court proceedings did not decide against the prisoner on any element of his section 1983 claim and, finally, a determination of the legality of the police officers' conduct "would not have been essential to the trial court's acceptance of [the prisoner's] guilty plea." *Id.* at 316, 103 S.Ct. at 2374. The Court noted that the prisoner's section 1983 action did not challenge his conviction because his Fourth Amendment claim was "irrelevant to the constitutional validity of the conviction." *Id.* at 321, 103 S.Ct. at 2377.

Smith's section 1983 claim challenging the legality of the police conduct is distinct from the issue whether Smith committed a rape. Whether the defendants fabricated evidence against Smith does not directly determine Smith's guilt or innocence. The defendants, relying primarily on Smith's pro se complaint, go to some lengths to characterize his claim as a collateral attack on his conviction. They note that his complaint alleges that

> [T]he above described conduct of the defendant[s] ... deprived plaintiff, Theodore Smith, of his liberty for 3 years and 6 months. And deprived him of his rights under the United States Constitution.... Furthermore, as a result of these actions, plaintiff, Theodore Smith, served 3 years and 6 months' in the Illinois State Penitentiary.

The defendants apparently read this complaint as stating that Smith can only prevail on his section 1983 claim if his conviction is invalid. This is not necessarily so. Smith need not legally attack the validity of his conviction to prevail on his section 1983 claim if he can prove that the defendants' misconduct injured him. The causation element of section 1983 requires only that the plaintiff prove that the defendant, acting "under color of" law, caused the deprivation of his constitutional rights. 42 U.S.C. § 1983. Smith, therefore, can prevail if he shows that the defendants fabricated evidence leading to his false arrest and subsequent unreasonable seizure, *see, e.g., Olson v. Tyler,* 825 F.2d 1116 (7th Cir.1987); *Bohannon v. Pegelow,* 652 F.2d 729 (7th Cir.1981) causing him to suffer damages. Smith cannot be faulted for believing that without the fabricated evidence he would not have been incarcerated. The truth of this sentiment, however, is irrelevant to Smith's section 1983 claim.

In *Wooley v. Maynard,* 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977), the Supreme Court allowed plaintiffs to pursue a section 1983 claim seeking declaratory and injunctive relief against the enforcement of a New Hampshire law requiring them to display the State motto "Live Free or Die" on their vehicle license plates. One of the plaintiffs was convicted three times for refusing to abide by this law. He then filed his section 1983 suit. The Supreme Court rejected the defendant's argument that federal courts could not exercise jurisdiction

over the section 1983 claim, despite the fact that the plaintiff failed to seek review of his criminal convictions. *Id.* at 710–11, 97 S.Ct. at 1432–33. The Court reasoned that federal jurisdiction was proper because the plaintiff's lawsuit was in no way

> "designed to annul the results of a state trial" since the relief sought is wholly prospective, to preclude further prosecution under a statute alleged to violate [plaintiffs'] constitutional rights. [One plaintiff] has already sustained convictions and has served a sentence of imprisonment for his prior offenses. He does not seek to have his record expunged, or to annul any collateral effects those convictions may have, *e.g.*, upon his driving privileges.

*Id.* at 711, 97 S.Ct. at 1433 (quoting from *Huffman v. Pursue*, 420 U.S. 592, 609, 95 S.Ct. 1200, 1210, 43 L.Ed.2d 482 (1975)).

Smith's claim closely resembles the section 1983 action described in *Wooley.* Smith does not seek to "annul" the results of his state conviction, nor does he seek expungement or any other relief related to his conviction. Rather, Smith seeks only monetary damages. In this sense, the case for federal jurisdiction is even stronger here than in *Wooley* where plaintiffs sought declaratory and injunctive relief. *See Preiser*, 411 U.S. at 494, 93 S.Ct. at 1838.

We have previously recognized, however, that under *Preiser* prisoners should not be allowed to pursue section 1983 claims merely because they seek damages. *Hanson v. Heckel*, 791 F.2d 93, 96 (7th Cir.1986). Simply because a plaintiff seeks damages rather than injunctive relief does not automatically allow her to pursue her section 1983 claim. We have looked beyond the relief sought by the plaintiff and required that the section 1983 action raise issues other than the fact or length of a prisoner's confinement. *Crump v. Lane*, 807 F.2d 1394, 1400 (7th Cir.1986). Smith's section 1983 claim clearly does.

Smith's claim is unique in that he is no longer a prisoner. On its face, it is absurd to suggest that Smith, free from custody, now attacks the length or conditions of his confinement or that his claim seeks "immediate or more speedy release." Unlike a prisoner, Smith had no reason to challenge the length or condition of his confinement because he has already been released. Although Smith's complaint refers to his loss of freedom, it clearly seeks damages for the wrongful conduct of the defendant officers and does not seek a reversal or expungement of his conviction.

The defendants would place Smith in an anomalous position, leaving him with no remedy for their allegedly illegal conduct. The relief provided under the writ of habeas corpus is unavailing to Smith because he is no longer in custody. *Hanson*, 591 F.2d 404. Moreover, Smith was unable to take advantage of the habeas relief while in custody because he did not uncover the "smoking gun" evidence until after his release. Now, after serving his full prison term, the defendants maintain that Smith is precluded from pursuing his section 1983 claim because habeas relief is his exclusive remedy. This "Catch–22" is unsupported by law. The defendants' position would also create the unacceptable result of leaving their unlawful conduct unpunished and undeterred. We decline to encourage this result.

## II.

■ Finally, the defendants argue that jurisdiction is improper because Smith failed to exhaust his state remedies. In particular, the defendants maintain that Smith can seek a pardon on grounds of innocence from the Governor of the State of Illinois pursuant to Ill.Rev.Stat. ch. 38, ¶ 1003–3–13 (1985), and receive damages from the Illinois Court of Claims for "time unjustly served," Ill.Rev.Stat. ch. 37, ¶ 439.8(c) (1985).

This exhaustion argument, however, ignores the teachings of *Preiser* and *Haring.* The exhaustion requirement relates only to habeas corpus petitions and not to section 1983 claims. "[A] damages action by a state prisoner could be brought under the Civil Rights Act in federal court without any requirement of prior exhaustion of state remedies." *Preiser*, 411 U.S. at 494,

93 S.Ct. at 1838. As discussed in detail above, Smith's claim is dissimilar from a habeas petition which attacks the duration or conditions of confinement. His section 1983 action, therefore, is not subject to the habeas exhaustion requirement. As far as Smith's section 1983 claim is concerned, it is now well-settled that there is no exhaustion requirement. *Patsy v. Florida Board of Regents*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982); *Button v. Harden*, 814 F.2d 382, 384 (7th Cir.1987).[3]

For the foregoing reasons, the order of the district court is reversed and remanded for further proceedings in accordance with this opinion.

REVERSED AND REMANDED.

---

**3.** We also have grave doubts as to the availability and adequacy of the purported state remedies. Even putting to one side the availability of this rare executive clemency, the potential relief is far from adequate. In the first place, were Smith to convince the Governor of his innocence, the statute would limit the total amount of damages to no more than $15,000. Ill.Rev.Stat. ch. 37, ¶ 439.8(c) (1985). Second, this remedy only applies to damages against the State; it provides no relief for the injury caused by the defendants in this case. Smith's remedy against the State through a pardon and the Court of Claims and his section 1983 lawsuit are not mutually exclusive. If the defendants deprived him of his constitutional rights, section 1983 entitles him to relief; if the State is also liable, Smith is not *entitled* to damages because of the eleventh amendment, but the State of Illinois has agreed to provide limited compensation. Smith's claim against the defendants and potential claim against the State are separate and distinct. The remedy suggested by the defendants is not only inadequate (if even "available"), but does not preclude Smith's section 1983 claim.

Finally, the defendants refer obliquely to another "available remedy," Ill.Rev.Stat. ch. 110, ¶ 2–1401 (1985), which allows prisoners to attack criminal convictions within two years of the entry of judgment. The only exceptions to this two-year requirement, legal disability, duress, and fraudulent concealment, do not apply to the facts of this case.